UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

BILLY A., *et al.*,                                §
                                                    §
                    Plaintiffs,                     §
                                                    §        CIVIL ACTION NO. 3:02CV475WS
v.                                                  §
                                                    §
WARREN A. JONES, M.D., *et al.*                    §
                                                    §
                    Defendants.                     §

## ORDER

This action comes before the Court pursuant to the parties' *Joint Motion for Court Approval* and *Adoption of Settlement Agreement* and *Stipulation of Dismissal* filed on March 24, 2005.

On September 30, 2003, this action was certified as a class action under Rule 23(b)(2). The class is comprised of the following individuals:

> All people with disabilities who are, or will be, unnecessarily segregated in nursing facilities, and those who are, or will be, at risk of unnecessary segregation in nursing facilities, due to lack of sufficient community support services in Mississippi.

The parties have advised the Court that they have arrived at a settlement agreement that concludes in all respects this litigation. On March 30, 2005, this Court issued an order incorporating the settlement, retaining jurisdiction to enforce the settlement, and dismissing the cause. Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, this Court has now conducted a fairness hearing to review and approve the settlement of the claims of the certified class.

A Notice of Proposed Settlement was: (1) mailed to class members residing in nursing facilities; (2) posted on Defendants' official state web sites; and (3) distributed to numerous disability organizations throughout the state of Mississippi.  The Notice adequately informed class members of the terms of the proposed settlement and advised class members of their options and rights with respect to the settlement.  The Notice also informed class members of the date and location of the fairness hearing conducted by this Court.  The Court finds that notice was provided in a reasonable manner to all class members who would be bound by the proposed settlement as required by Rule 23(e)(1)(B).

Consistent with Rule 23(e)(1)(C), a fairness hearing was held on June 23, 2005, to determine whether this proposed settlement should be approved.  After consideration of the matter and being otherwise fully advised, this Court finds that the proposed settlement agreement fairly, reasonably, and adequately represents the interests of the past, present, and future class members.  The settlement provides for systemic changes in Defendants' policies which will benefit present and future class members.  The settlement also represents a compromise in light of what would have been an uncertain outcome at trial.  Further, no member of the class objected to the terms of the settlement.

Pursuant to Rule 23(e)(1)(A), it is hereby ORDERED and ADJUDGED that the Settlement Agreement, attached hereto, is approved, adopted, and fully incorporated as this Court's Order.  It is further ORDERED that this Court has exclusive, ongoing jurisdiction over matters relating to enforcement of the Agreement and Order.  In accordance with the parties' joint stipulation of dismissal pursuant to Rule 41(a), this action is dismissed, with prejudice.

So ORDERED and SIGNED on this __23rd__ day of June, 2005.

HENRY T. WINGATE
UNITED STATES DISTRICT JUDGE

Civil Action No. 3:02-cv-475 WS
Order approving and adopting attached
   settlement agreement and dismissing
   action with prejudice

3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

| | | |
|---|---|---|
| BILLY A., *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 3:02CV475WS |
| | § | |
| WARREN A. JONES, M.D. *et al.* | § | |
| | § | |
| Defendants. | § | |

## SETTLEMENT AGREEMENT

## 1.    INTRODUCTION

1.1      On May 16, 2002, five individuals with disabilities and the Mississippi Coalition for Citizens with Disabilities ("MCCD") filed this class action lawsuit on their own behalf, and that of others with disabilities, alleging that Defendants violated the requirements of the Medicaid Act, 42 U.S.C.§1396, *et seq.*, the Americans with Disabilities Act, 29 U.S.C.§12101, *et seq.*, and Section 504 of the Rehabilitation Act, as amended, 29 U.S.C. §794.  Defendants have at all times denied Plaintiffs' claims.

1.2     To resolve this matter in an expeditious manner and to promote the parties' common goals concerning community-based services for people with disabilities, the parties have entered into this Settlement Agreement ("Agreement").

## 2.    PARTIES TO SETTLEMENT AGREEMENT

The following individuals and entities are parties to this Agreement:

Plaintiffs

2.1     Individual Plaintiffs, Billy A., Kim M., Angela M., and Mickey C., and the

organizational Plaintiff, Mississippi Coalition for Citizens with Disabilities ("MCCD");

2.2    Plaintiff class, defined by the Court's Order dated September 30, 2003, as:

All people with disabilities who are, or will be, unnecessarily segregated in nursing facilities, and those who are, or will be at risk of unnecessary segregation in nursing facilities due to the lack of sufficient community support services in Mississippi.

Defendants

2.3    Defendant, Dr. Warren A. Jones, in his official capacity as Executive Director of the Mississippi Division of Medicaid ("MDOM") and his successors in office; and

2.4    Defendant, H.S. McMillan, in his official capacity as Executive Director of the Mississippi Department of Rehabilitation Services ("DRS") and his successors in office.

3.    **DEFINITIONS and TERMS**

For purposes of this Agreement, these specific terms shall have the following meanings:

3.1    "CMS" means the Centers for Medicare and Medicaid Services, United States Department of Health and Human Services.

3.2    "Complaint" means Plaintiffs' Original Complaint and First Amended and Supplemental Complaint.

3.3    "Date of admission" means the date an individual became a nursing facility ("NF") resident.

3.4    "Medicaid Waiver Participant" means an individual who has been found eligible for Medicaid Waiver services.

3.5    "Medicaid Waiver Programs" means nursing facility home and community based waiver programs, operated under the authority of MDOM, as the single state Medicaid agency, pursuant to approval granted by CMS under section 1915(c) of the Social Security Act.[1] This term refers to the Independent Living ("IL")Waiver, the Traumatic Brain Injury/Spinal Cord Injury ("TBI/SCI") Waiver, and the

---

[1] Nothing in this Agreement restricts, or otherwise affects, the rights of class members with developmental disabilities or mental health diagnoses from obtaining services available to them from other State programs or agencies.

Elderly and Disabled ("E&D") Waiver programs.

3.6    "Notice" means a letter provided by Defendants to a Medicaid beneficiary informing the beneficiary of any reduction, denial, or termination of a requested service, as described in 42 C.F.R. §§ 431.206 and 431.210.

3.7    "Nursing facility resident" means any individual currently admitted to a Medicaid or Medicaid/Medicare participating nursing facility.

3.8    "Policy" means all rules, criteria, guidelines, and standards that direct Defendants' actions concerning Medicaid Waiver programs.

3.9    "Referral List" means the list(s) maintained by Defendants containing the names and any other relevant information of individuals who are seeking Medicaid Waiver Services.  This term does not include the NF Resident Master List or the Billy A. Waiver Referral Lists, as  described in Section 7 of this Agreement.

3.10   "Personal Care Services" means support services provided to participants in the IL and TBI/SCI Waiver programs who require assistance with activities of daily living ("ADLs"), instrumental activities of daily living ("IADLs"), and other health-related functions.

## 4.    GENERAL PROVISIONS OF THE AGREEMENT

4.1    The purpose of this Agreement is to conclude in all respects the litigation pending in the United States District Court for the Southern District of Mississippi bearing the caption, *Billy A. et al., v. Jones, et al.*, Civil Action No. 3:02CV475, including both the merits of the case and Plaintiffs' attorneys' fees and expenses. By executing this Agreement, Plaintiffs and past, present, and future class members release Defendants from any claims that were raised or could have been raised in this litigation.

4.2    This Agreement is the product of negotiation and each party has made concessions and obtained favorable outcomes that might not have been obtained if this case had been decided by the Court.  The parties recognize that a negotiated agreement is preferable to further protracted litigation and enter into this Agreement in support of the rights of people with disabilities to receive

necessary support services in the most integrated setting.

4.3     Each party has participated in the negotiation and drafting of this Agreement and freely enters into this Agreement following consultation with and advice by counsel.  All undersigned counsel of record for the parties have complete authority to execute this Agreement on behalf of their clients.

4.4     Entry into this Agreement shall not be construed as an admission of liability by Defendants.

4.5     It is expressly agreed that all terms of this Agreement are contractual and not merely recitals.  The parties to this Agreement intend that this document will incorporate the complete terms and conditions of their agreement, superceding any previous agreements.

4.6     This Agreement is binding on the parties and past, present, and future class members, including all principals, agents, administrators, representatives, successors, and assigns.  Each party has a duty to so inform any such principal, agent, administrator, representative, successor or assign.

4.7     This Agreement may be executed in multiple counterparts, each of which, if fully executed, is to be considered as a duplicate original.

4.8     The terms of this Agreement may be modified only in writing and signed by all parties or their counsel of record.

4.9     This Agreement is effective as of the date of the Court's approval, adoption, and incorporation of the Agreement into a Court Order. All time frames included in the Agreement are calculated from the effective date of the Agreement, unless otherwise stated.

4.10    All time periods specified in this Agreement may be extended by mutual agreement of the parties.

4.11    This Agreement is subject to revision in the event of an intervening change in federal law that impacts the Medicaid Waiver programs that are the subject of this litigation. To the extent that any provision of this Agreement is held to be invalid, such provision shall be severed from the remainder of the Agreement and the Agreement shall  be construed as if the invalid provision did not exist.

4.12    In the event that CMS does not approve one or more of the substantive changes to Defendants' Medicaid Waiver programs required by this Agreement, the specific provision(s) shall be null and void. Defendants will give good faith consideration to, but will not be required to adopt, any alternative suggestions made by Plaintiffs to address the particular issue.

4.13    In the event that the Court withholds its approval of this Agreement, in whole or in part, or declines to issue an Order adopting the provisions of the Agreement, the parties shall meet and confer to determine whether the Agreement can be modified in a manner so as to secure the Court's approval and adoption.  If there is no agreement to an amendment, the Agreement will terminate and will have no force or effect.

## 5.    NOTICE OF SETTLEMENT TO CLASS MEMBERS

5.1    Defendants will mail the attached Notice of Proposed Settlement (Exhibit 1) to all NF residents (approximately 14,500) who are recorded by MDOM's computerized payment system as receiving Medicaid benefits as of the date this Agreement is signed.  This Notice will be mailed within thirty (30) calendar days of approval of the Notice by the Court.

5.2    Upon approval by the Court, Defendants will display the Notice of Proposed Settlement on each of their web sites by maintaining links to the Notice of Proposed Settlement on the home pages of these web sites. Defendants will maintain the Notice of Proposed Settlement on each of their web

sites until the Court issues an order approving or disapproving the terms of this Agreement.

5.3     Upon approval by the Court, Plaintiffs will disseminate the Notice of Proposed Settlement to disability groups throughout the State and request that these groups publish the Notice on their web sites or in their newsletters.

5.4     NF residents who contact Defendants pursuant to the Notice of Proposed Settlement and express an interest in Defendants' Medicaid Waiver Programs shall be placed on existing Medicaid Waiver Referral Lists. Defendants will continue to address individuals on their Referral Lists, including those persons in NFs, in the manner in which the lists are currently processed.

**6.     TRANSITION SUPPORT SERVICES FOR NF RESIDENTS WHO WANT TO MOVE TO THE COMMUNITY.**

6.1     Defendants and Living Independence for Everyone ("LIFE") have entered into a contract through which LIFE will assist NF residents who want to move to the community, as set forth in Section 7 of this Agreement. (Exhibit 2).  The terms of the contract between LIFE and Defendants are not enforceable in this action.

6.2     The parties recognize that LIFE is not under the direction or control of Defendants, thus, Defendants will not be in breach of this Agreement if LIFE is unable to satisfy the terms of their contract.   In the event that LIFE is unable to satisfy the terms of the contract, Defendants are responsible for completing those tasks assigned to Defendants in Section 7 of this Agreement.

6.3     For the remainder of SFY 2005 and through SFY 2006, Defendants will, in good faith, identify, review, and apply for CMS grants or grants from other funding sources, which Defendants determine are suitable for providing additional financial resources for the services provided by LIFE pursuant to the contract referenced in ¶6.1.  Prior to submission, Defendants will provide Plaintiffs'

counsel with a copy of any grant application prepared by Defendants pursuant to this paragraph.

6.4    Within thirty (30) days of the effective date of this Agreement, Defendants will submit to CMS the necessary requests for amendments to their existing Medicaid Waiver programs to allow for payment of one-time (per lifetime) transition costs for NF residents who are transitioning to the community on Defendants' E&D, IL, or TBI/SCI Medicaid Waiver Programs.  These amendments will allow Defendants to pay for the cost of housing deposits, utility deposits, and moving expenses, up to $800.00 of actual costs, for any  NF resident who requires this assistance to transition to the community with E&D,  IL, or TBI/SCI Medicaid Waiver services.  Within thirty (30) days of written approval by CMS of the Medicaid Waiver amendments, Defendants will develop any necessary policies and procedures and will implement these  amendments.

## 7.    PROVISION OF COMMUNITY-BASED SERVICES TO NF RESIDENTS WHO WANT TO MOVE TO THE COMMUNITY

7.1    Within twenty one (21) days of signing this Agreement, Defendants will generate a NF Resident Master List containing the names of all NF residents who answered "yes" to question Q1A on the Minimum Data Set ("MDS") for Nursing Home Resident Assessment and Care Screening completed for the Second Quarter of 2004 (1,669 persons).

7.2    Defendants will maintain and update the NF Resident Master List until the Billy A. Waiver Referral Lists described in ¶7.5 are created.

7.3    Within seven (7) days of generating the NF Resident Master List, Defendants will provide a copy of the list to LIFE.  As the information provided to LIFE pursuant to this Court approved settlement is confidential and subject to protection under federal and state law, LIFE will be required to safeguard this information consistent with applicable law.  LIFE will be prohibited from

disclosing or distributing any confidential information contained on the NF Resident Master List to any person other than Plaintiffs' counsel and Defendants without the express authorization of Defendants or the Court.  As outlined in the terms of their contract with Defendants, LIFE will contact each individual on the NF Resident Master List to determine whether he or she desires to move to the community via the E&D, IL, or TBI/SCI Medicaid Waiver Programs. Contact with each individual on the NF Resident Master List will be documented by LIFE on a data report form developed by Defendants. This data report form will be completed by LIFE for every individual, including those who are deceased or cannot be located.

7.4     For each individual who informs LIFE that he or she does not wish to transition to the community on the E&D, IL, or TBI/SCI Medicaid Waiver Programs or who fails to indicate a response to LIFE within twenty-one (21) days of the initial contact,  LIFE will document such on the data report form and will advise the individual that he or she may apply for Medicaid Waiver services in the future and have his or her name added to Defendants' existing Medicaid Waiver Referral Lists, which are separate and distinct from the NF Resident Master List and the Billy A. Waiver Referral Lists. The Billy A. Waiver Referral Lists shall be comprised of only those individuals who indicate to LIFE within twenty-one (21) days of initial contact that they desire to apply for the E&D, IL, or TBI/SCI Medicaid Waiver programs.

7.5     For those individuals whose data report forms reflect that they wish to move to the community on the IL, TBI/SCI, or E& D Medicaid Waiver Programs, Defendants will  place their names on the Billy A. Waiver Referral Lists, which will be maintained separately for each of the three Medicaid Waiver programs. The order of placement on the Billy A. Waiver Referral Lists will be based upon each individual's date of admission to the nursing facility so that individuals with the

oldest dates of admission precede those with more recent admission dates. Defendants will maintain and update the three Billy A. Waiver Referral Lists until Section 6 and 7 of this Agreement are terminated.

7.6     Defendants will begin the application process for each individual appearing on the Billy A. Waiver Referral Lists when that person's name appears at the top of any of these lists and there exists an open waiver slot in the relevant waiver program pursuant to the allocation of slots contained in ¶ 7.9. Defendants will contact LIFE within seven (7) days of the initiation of the application process so that LIFE can contact the individual and determine if he/she wants LIFE's services. Defendants will make Medicaid Waiver eligibility determinations for these individuals within ninety (90) days of the date of application and notify these individuals of their eligibility for Medicaid Waiver services in writing, except in unusual circumstances, as described in 42 C.F.R. §435.911.

7.7     Defendants shall set aside the specific percentage or number of slots per year in the IL, TBI/SCI, and E&D waivers, as set forth in ¶ 7.9, to be initially offered to individuals appearing on the Billy A. Waiver Referral Lists for that waiver. A waiver slot shall be considered to have been offered to a person appearing on the Billy A. Waiver Referral List when Defendants have found that person to be eligible for the selected waiver program and the waiver slot has been made available to that person for six (6) months and one (1) week from their application date. Although a waiver slot will be held available for six (6) months and one (1) week for any such NF resident, a person shall not be considered to be accepted into the E&D, IL, or TBI/SCI waiver program or to have been receiving such waiver services unless and until that person transitions out of the NF facility on the E&D, IL, or TBI/SCI Waiver Program. If the NF resident is unable to transition to the community with Medicaid Waiver services during the six (6) month and one (1) week time period, Defendants may offer the

Medicaid Waiver slot to the next qualified person on either the Billy A. Waiver Referral Lists or the Medicaid Waiver Referral Lists. Defendants will continue to address individuals on their Medicaid Waiver Referral Lists, including those persons in NFs, in the manner in which the lists are currently processed.

7.8    Defendants' obligations to each individual on the Billy A. Waiver Referral Lists will be met if an individual:

(a)    transitions out of the NF into the community with Medicaid Waiver services;

(b)    is unable to transition from the NF to the community at the end of six (6) months and one week following his or her application date.

(c)    is determined ineligible for Medicaid or a Medicaid Waiver program;

(d)    informs Defendants or LIFE that he or she is no longer interested in moving to the community with E&D, IL, or TBI/SCI Waiver Programs; or

(e)    dies, or leaves the nursing facility without assistance from Defendants.

In the above instances, Defendants will record the specific outcome for each individual on the Billy A. Waiver Referral Lists.

7.9    Defendants will annually reserve, on a state fiscal year basis, the following percentage or number of Medicaid Waiver participant slots to be initially offered to persons appearing on the Billy A. Waiver Referral Lists, in conformity with Section 7 of this Agreement:

| SFY 2005 | IL Waiver Program | 75% of all remaining new and remaining attrition slots as of the effective date of the Agreement |
| | TBI/SCI Waiver Program | 75% of all remaining new and remaining attrition slots as of the effective date of the Agreement |
| | E&D Waiver Program | 250 slots |

| SFY 2006 | IL Waiver Program | 50% of all attrition slots<br>50% of any new slots, up to the first 250<br>75% of any new slots above 250 |
| | TBI/SCI Waiver Program | 50% of all attrition slots<br>50% of any new slots, up to the first 250<br>75% of any new slots above 250 |
| | E&D Waiver Program | 250 slots |
| SFY 2007 | IL Waiver Program | 50% of all attrition slots<br>50% of any new slots, up to the first 250<br>75% of any new slots above 250 |
| | TBI/SCI Waiver Program | 50% of all attrition slots<br>50% of any new slots, up to the first 250<br>75% of any new slots above 250 |
| | E&D Waiver Program | 250 slots |
| SFY 2008 | IL Waiver Program | 50% of all attrition slots<br>50% of any new slots, up to the first 250<br>75% of any new slots above 250 |
| | TBI/SCI Waiver Program | 50% of all attrition slots<br>50% of any new slots, up to the first 250<br>75% of any new slots above 250 |
| | E&D Waiver Program | 250 slots |

7.10     Defendants' obligations described in ¶¶ 7.1 through 7.10 of this Agreement apply to each person on the Billy A. Waiver Referral Lists.   However, if individuals remain on the Billy A. Waiver Referral Lists beyond State Fiscal Year 2008, the percentages set forth in ¶7.9 shall not apply.

7.11     In light of the 2001 Mississippi Access to Care Plan, the number of NF residents who have indicated on the Nursing Home Resident Assessment that they desire to live in the community, and Defendants' desire to further augment the availability of Medicaid Waiver services, Defendant McMillan shall include in his budget requests submitted to the Mississippi Legislature for SFY 2007

and 2008, specific and sufficient line-item funding to expand the number of IL waiver participants by an additional 500 persons per year and the number of TBI\SCI waiver participants by an additional 500 persons per year.  In addition to submission of these budget requests, Defendant McMillan shall make a good faith effort during each of these two fiscal years to secure from the Mississippi Legislature the funding necessary to annually expand the IL and TBI\SCI waiver programs by the above-specified number of participants.  Defendant McMillan will inform the relevant appropriation committee chairperson and committee members of the terms of this Agreement and request  the above increased funding for Medicaid Waiver services during all budget hearings before the Legislature.  Counsel from the Office of the Attorney General will be present during these budget hearings and will be available to explain the legal issues raised by this litigation and the terms of the Settlement Agreement.

7.12    As Defendant McMillan submitted his budget for SFY 2006 prior to the negotiation of this Agreement, he will make a good faith effort to seek specific and sufficient line-item funding to expand the number of IL waiver participants by 500 persons and the number of TBI/SCI waiver participants by 500 persons for SFY 2006 during the remaining legislative budget process by informing the relevant appropriation committee chairperson and committee members of the terms of this Agreement and requesting the above increased funding for Medicaid Waiver services during all remaining budget hearings before the Legislature.  Counsel from the Office of the Attorney General will be present during these budget hearings and will be available to explain the legal issues raised by this litigation and the terms of the Settlement Agreement.

7.13    Within thirty (30) days of the date the Governor signs a bill which  contains an IL or TBI/SCI specific line item appropriation increase, as requested in ¶¶ 7.11 and 7.12, Defendants shall amend the IL and TBI\SCI Waiver applications to reflect any increases in line-item funding for these

Medicaid Waiver programs and the increased number of Medicaid Waiver participants secured through the "good faith efforts" detailed in ¶¶7.11 and 7.12.

7.14    In the event that Defendants secure the increased funding for IL and TBI/SCI Waiver slots described in ¶¶ 7.11 and 7.12, Defendants shall make a good faith effort to annually serve the increased number of participants approved by CMS and funded by specific line-item in the MDRS appropriation bills passed by the Mississippi Legislature.

## 8.    INCREASED ACCESS TO, AND QUALITY OF, PERSONAL CARE SERVICES

8.1    Within sixty (60) days of the effective date of this Agreement, Defendants will clarify their written policies to state that the amount of personal care services provided to Medicaid Waiver participants in the IL and TBI/SCI Waiver programs is based upon each individual's particular need for this service and that there are no predetermined or fixed limits on the amount of personal care services available through these  programs.

8.2    Within thirty (30) days of the effective date of this Agreement, Defendants will request an amendment to their Medicaid Waiver program, consistent with the requirements of 42 C.F.R. §440.167, to allow otherwise qualified family members who are not legally responsible for a Medicaid Waiver participant in the IL and TBI/SCI Waiver programs to be employed as the personal care attendant for their family member, if the Medicaid Waiver participant chooses his or her family member to act in this capacity.  Currently, the spouse of a Medicaid Waiver participant and the parent/legal guardian of a minor child Medicaid Waiver participant are considered legally responsible family members and are therefore excluded from employment as personal care attendants. Personal care services may be provided by non-legally responsible relatives only if the relatives meet the qualifications for personal care attendants and there is adequate justification as to why the relative is

the attendant, e.g., lack of other qualified attendant in remote areas.

8.3     Nothing in this Agreement will prohibit, or otherwise restrict, Defendants from seeking demonstration grants or waivers from CMS or grants from any other funding sources that allow legally responsible family members to be employed as personal care attendants for Medicaid Waiver participants.

8.4     Defendant McMillan shall  increase the wages paid to personal care attendants in the IL and TBI/SCI waiver programs by $0.50 per hour effective July 1, 2005. Defendant McMillan shall also include in his budget requests submitted to the Mississippi Legislature for SFY 2007 and SFY 2008, specific and sufficient line-item funding to increase the wages paid to personal care attendants in the IL and TBI/SCI waiver program by an additional $0.50 per hour in both SFY 2007 and SFY 2008. In addition to the submission of these budget requests, Defendant McMillan will make a good faith effort  during each of these two fiscal years to secure from the Mississippi legislature the funding necessary to increase wages paid to personal care attendants by $0.50 per hour each year.  Defendant McMillan will inform the relevant appropriation committee chairperson and committee members of the terms of this Agreement and request  the above increased funding for Medicaid Waiver services during all budget hearings before the Legislature. Counsel from the Office of the Attorney General will be present during these budget hearings. Within thirty (30) days of the date the Governor signs a bill which contains an IL or TBI/SCI specific line-item appropriation to raise the wages paid to personal care attendants,  Defendants will amend the IL and TBI\SCI waivers to reflect the increase if an amendment is required.

8.5    As Defendant McMillan submitted his budget for SFY 2006 prior to the negotiation of this Agreement, he will make a good faith effort to obtain, in addition to the increase described in ¶8.4,

specific and sufficient line-item funding to increase the wages paid to personal care attendants in the IL and TBI/SCI waiver programs by an additional $.50 per hour for SFY 2006 during the remaining legislative budget process by informing the relevant appropriation committee chairperson and committee members of the terms of this Agreement and requesting the above increased funding for Medicaid Waiver services during all remaining budget hearings before the Legislature.  Counsel from the Office of the Attorney General will be present during these budget presentations.

8.6     The parties acknowledge that Defendants must maintain the cost neutrality of their Medicaid Waiver programs in conformity with the federal requirements governing home and community-based waiver programs.

## 9.    DUE PROCESS PROTECTIONS FOR MEDICAID WAIVER PROGRAM APPLICANTS AND PARTICIPANTS

9.1    Within sixty (60) days of the effective date of this Agreement, Defendants will conform their policies to federal law concerning the provision of specific written notice to Medicaid Waiver applicants and participants whenever Defendants reduce, deny, or terminate any Medicaid Waiver service, including but not limited to, the amount of personal care services provided through these programs.

9.2    Consistent with 42 C.F.R. §431.200-250, all notices required under this Section will contain the following information:

(a)    The dates, type, and amount of service requested;

(b)    A statement of what action the Agency intends to take (i.e., a reduction, denial, or termination of services) and the basis for the intended action;

(c)    The specific regulations that support, or the change in Federal or State law that requires this action; and

(d)    An explanation of --

    (1) The individual's right to request a fair hearing;

> (2) The number of days and date by which the fair hearing must be requested;
> (3) The individual's right to represent himself or herself, or use legal counsel, a relative, friend, or other spokesperson;
> (4) The circumstances under which services will be continued if a hearing is requested.

9.3    All fair hearings requested by Medicaid Waiver Program applicants or participants will meet the due process standards set forth in 42 C.F.R. § 431.200, *et seq.*

9.4    Nothing in this Agreement will prevent Defendants and Medicaid Waiver applicants and participants from informally resolving any disagreement about services after Defendants provide the required written notice described in ¶9.2.

**10.    MEDICAID WAIVER PROGRAM POLICIES AND PROCEDURES**

10.1    Within sixty (60) days of the effective date of this Agreement, Defendants will clarify their written policies to state that NF residents can apply for Medicaid Waiver services while in the nursing facility.   These policies shall specify that if Medicaid Waiver referral lists are in operation, NF residents will have their names placed on these lists and can apply for Medicaid Waiver services when their names come to the top of the list.

10.2    Defendants shall provide Plaintiffs' counsel with all policies and procedures referenced in ¶¶ 6.4, 8.1, 8.2, 8.4, 9.1,  9.2 and 10.1 that are either proposed or clarified prior to the effective date of this Agreement.   These policies and procedures shall be provided to Plaintiffs' counsel within thirty (30) days of the effective date of the Agreement and Plaintiffs' counsel will comment on Defendants' policies and procedures within five (5) business days of receipt.   Defendants shall give good faith consideration to suggestions offered by Plaintiffs' counsel.  All policies and procedures referenced in ¶¶ 6.4, 8.1, 8.2, 8.4, 9.1,  9.2 and 10.1 that are either proposed or clarified after the effective date of the Agreement will be provided to Plaintiffs' counsel prior to implementation and Plaintiffs' counsel

Page 16

will comment on Defendants' proposed policies and procedures within five (5) business days of receipt. Defendants shall give good faith consideration to suggestions proposed by Plaintiffs' counsel.

**11.     PRE-ADMISSION SCREENING FOR LONG TERM CARE SERVICES**

11.1     Within twelve (12) to sixteen (16) months of the date this Agreement is signed by the parties, Defendants will develop and implement a pre-admission screening process for NF services, which will, among other things, inform individuals seeking NF services of the feasible alternatives to NF admission available through Defendants' Medicaid Waiver Programs and allow such individuals the opportunity to make an informed choice between institutional and community-based services.

11.2     Defendant Jones  will retain the services of a consulting firm to assist in the development of a comprehensive pre-admission screening process that, among other things, provides for comparable eligibility criteria for NF services and Medicaid Waiver services.  Plaintiffs will also retain a consultant, at no expense to Defendants, to provide input to Defendants and their consulting firm concerning the development and implementation of an effective pre-admission screening process and to review Defendants' proposed system. Defendants will give good faith consideration to the recommendations or suggested revisions offered by Plaintiffs' consultant.

11.3     Defendants shall not pursue or support legislation that prohibits or otherwise inhibits the development and implementation of a pre-admission screening process for NF services.  In the event that intervening circumstances beyond the control of Defendants, such as state or federal legislation or judicial decision, make it legally impossible to develop and implement a  NF pre-admission screening process, the parties shall meet within thirty (30) days to identify a mutually agreeable alternative.  If no mutually agreeable alternative is reached, the parties shall submit the issue to mediation and/or request assistance from the Court within thirty (30) days.  If no resolution is

reached, Section 11 shall become null and void, however, Defendants shall continue to inform individuals who are likely to require NF level of care of the feasible alternatives available through Defendants' Medicaid Waiver programs and give them a choice of either institutional or home and community-based services.

## 12.   STRATEGIES TO REBALANCE MISSISSIPPI MEDICAID'S LONG TERM CARE SERVICES

12.1   Within six (6) months of the effective date of this Agreement, Defendants Jones and McMillan will meet with representatives of MCCD so that the Coalition can present its proposal regarding strategies to rebalance Mississippi Medicaid's long term care services.  Defendants will specifically request the participation of the Governor, Lt. Governor, and chairpersons of the relevant Medicaid,  public health and appropriation committees in the Mississippi House and Senate in this meeting.

## 13.   PROVISION OF COMMUNITY-BASED OR OTHER SERVICES TO BILLY A., KIM M., MICKEY C.,  AND ANGELA M.

13.1   Within thirty (30) days of the effective date of this Agreement, a representative of Defendants will individually contact Billy A., Kim M, and Mickey C. to inquire whether they need additional waiver and other State plan services, as well as needed medical, social, educational and other services, regardless of the funding source for the services to which access is gained.

13.2   Within thirty (30) days of the effective date of this Agreement, Defendants will ensure that a representative of Defendants contacts Angela M. to discuss the Medicaid waiver services, including transition support services, that are available to her so that she can make an informed choice between institutional and community-based services

13.3   Any dispute over the amount, duration, or scope of services provided to the named

Plaintiffs pursuant to Section 13 of this Agreement will be resolved through the due process procedures of the Mississippi Medicaid program.

## 14.    RETENTION OF JURISDICTION AND ENFORCEMENT OF THE AGREEMENT

14.1    It is the intention of the parties that this Agreement be approved, adopted by, and fully incorporated into an Order of the Court and that the Court shall have exclusive jurisdiction over all matters relating to enforcement of the Agreement.

14.2    The parties shall submit this Agreement to the Court as part of a Joint Motion for Court Approval and Adoption of Settlement Agreement and Stipulation of Dismissal. Dismissal of the underlying lawsuit with prejudice is conditioned upon the Court's approval of the joint motion and stipulation, as submitted. Similarly, this Agreement is expressly conditioned upon the Court's dismissal of the underlying lawsuit with prejudice.

14.3    If the parties have any questions or issues as to implementation of the provisions of this Agreement, the parties will negotiate in good faith to resolve such issues. In the event that any party fails to substantially comply with any portion of this Agreement, the party alleging noncompliance shall serve written notice of this claim to counsel for the opposing party, and will propose a resolution of the issue to the opposing party. The responding party shall have fourteen (14) days following receipt of the written claim to serve a written response. If the party asserting the breach is dissatisfied with the other party's response, the parties shall submit the issue to mediation. Each party shall present the names of three acceptable mediators and shall thereafter engage in mediation for a period of thirty (30) days with a mediator mutually chosen by the parties. If no mediator can be mutually selected, the parties will petition the Court for an appointed mediator. Each party will pay one-half of the mediator's fee. After presenting the claim to mediation consistent with the above provisions,

the party alleging substantial noncompliance may seek relief from the United States District Court for the Southern District of Mississippi

      14.4   Failure by a party to enforce any provision of this Agreement shall not be construed as a waiver of the party's right to enforce other provisions of the Agreement.

## 15.      REPORTING AND MONITORING OF THE AGREEMENT

      15.1   Defendants shall provide quarterly written reports to Plaintiffs' counsel, beginning the first quarter following the effective date of this Agreement as to the status of implementation of the Agreement and continuing through the first twelve (12) months of implementation. Thereafter, Defendants will provide written status reports to Plaintiffs' counsel every six (6) months until the Agreement is completely terminated.

      15.2   Defendants' status reports to Plaintiffs' counsel will provide detailed information as to all activities undertaken to fully implement the terms of this Agreement. In particular, Defendants' status reports will include specific and current information concerning all activities undertaken pursuant to Section 7 of this Agreement for each individual initially identified on the NF Resident Master List and thereafter, on the Billy A. Waiver Referral Lists. Defendants' status reports shall also include current copies of the Medicaid Waiver Referral Lists. As set forth below, the reporting and monitoring provisions shall terminate as set forth in Section 16.

      15.3   Plaintiffs' counsel acknowledge that personal medical or other information about specific individuals provided to them under this Court- approved Agreement is confidential in nature and subject to protection under federal and state law. Such confidential information will not be disclosed or distributed by Plaintiffs' counsel without the express authorization of Defendants or the Court.

16.    **TERMINATION OF THE AGREEMENT**

16.1  The parties agree that the following provisions of the Settlement Agreement will be

terminated in the manner and at the times specified herein:

(a)    Paragraphs 5.1- 5.3 shall terminate 60 days after the Fairness Hearing or the Court's approval of the Settlement Agreement, whichever is later.

(b)    Paragraph 5.4 shall terminate one year from the effective date of the Settlement Agreement.

(c)    Paragraphs 6.1-6.2 shall terminate at the expiration of the contract with LIFE.

(d)    Paragraph 6.3 shall terminate on June 30, 2006.

(e)    Paragraphs 7.1-7.10 shall terminate when Defendants have satisfied their obligations to each individual on the Billy A. Waiver Lists as those obligations are described in Paragraph 7.8. Each of the Billy A. Waiver lists will terminate separately when Defendants have satisfied their obligations to each individual on the particular Billy A. Waiver List as those obligations are described in Section 7 of the Agreement.

(f)    Paragraphs 7.11, 7.13, and 7.14 shall terminate on June 30, 2008.

(g)    Paragraph 7.12 shall terminate on June 30,2005.

(h)    Paragraph 8.4 shall terminate on June 30, 2008.

(i)    Paragraph 8.5 shall terminate on June 30, 2005.

(j)    Paragraphs 9.1, 9.2, and 9.3 shall terminate one year after the adoption of the required revisions and \or amendments specified therein.

(k)    Section 11 shall terminate eighteen months after the development and implementation of the Pre-Admission Screening process for NF residents.

(l)    Section 12 shall terminate after the occurrence of the meeting detailed in Paragraph 12.1.

(m)    Section 13 of the Settlement Agreement shall terminate after the Defendants comply with the provisions of Paragraphs 13.1 and 13.2.

(n)    All other provisions of the Settlement Agreement, including Paragraph 6.4; Paragraphs 8.1-8.2; and Paragraph 10.1 will terminate immediately upon the last termination event in Paragraph 16.1(a)-(m).

## 17.    ATTORNEYS' FEES, EXPENSES, AND COSTS

17.1    Plaintiffs have incurred legitimate attorneys' fees, expenses, and costs  in pursuing this matter. As a part of trial, Plaintiffs would have submitted a request for Defendants to pay these fees, expenses, and costs.  To settle this matter, Defendants agree to reimburse Plaintiffs $200,000 to settle all claims regarding fees, expenses and costs incurred by Plaintiffs and/or their counsel.

DATED this _____ day of _____, 2005

AGREED TO BY PLAINTIFFS:          AGREED TO BY DEFENDANTS:

_____          _____
William Austin                     Warren A. Jones, M.D.
                                   Executive Director
                                   Mississippi Division of Medicaid

_____          _____
Kimberly Mullis                    H.S. McMillan
                                   Executive Director
                                   Mississippi Department of Rehabilitation Services

_____
Angela Marsmon

_____
Mickey Cummins

_____
Mary Troupe, Executive Director
MS Coalition for Citizens with Disabilities

Page 23

AGREED TO BY PLAINTIFFS' COUNSEL:    AGREED TO BY DEFENDANTS' COUNSEL:


MAUREEN O'CONNELL
Bar No. 43246
SOUTHERN DISABILITY LAW CENTER
1307 Payne Ave.
Austin, TX 78757
(512) 458-5800/(512) 458-5850 (FAX)

By:   JIM HOOD
      ATTORNEY GENERAL
      STATE OF MISSISSIPPI


By:
      HAROLD E. PIZZETTA, III
      Mississippi Bar No. 99867
      SPECIAL ASS'T ATTORNEY GENERAL
      Civil Litigation Division
      Office of the Attorney General
      P.O. Box 220
      Jackson, MS 39205
      (601) 359-3680/(601) 359-2003 (FAX)

JAMES COMSTOCK-GALAGAN
Texas Bar No. 004653400
SOUTHERN DISABILITY LAW CENTER
976 South Beach Blvd.
Bay St. Louis, MS 39520
(228) 467-0092/ (228) 467-0858 (FAX)

ROBERT B. MCDUFF
Mississippi Bar No. 2532
767 North Congress St.
Jackson, MS 39202
(601) 969-0802/(601) 969-0804(FAX)

ATTORNEY FOR DEFENDANTS

STEPHEN F. GOLD
Pennsylvania Bar No. 09880
125 S. 9th Street, Suite 700
Philadelphia, PA 19107
(215) 627-7100/(215) 627-3183 (FAX)

ATTORNEYS FOR PLAINTIFFS

**EXHIBIT**

tabbies

1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
*Billy A. et al., v. Jones, et al.* Civ. No. 3:02CV475WS

**NOTICE OF PROPOSED CLASS ACTION SETTLEMENT AND HEARING**

**Please Read Carefully. This Proposed Settlement May Affect Your Rights If You Are A Nursing Home Resident With A Disability Who Wants To Live At Home With Medicaid Waiver Services Or A Person With A Disability Who Is At Risk Of Entering A Nursing Home. This Notice Describes The Proposed Settlement Of This Lawsuit.**

**I.     Nature of Class Action  -**  On May 16, 2002, five individuals with disabilities and the Mississippi Coalition of Citizens with Disabilities ("MCCD") filed this class action lawsuit so that people with disabilities can obtain Medicaid Waiver services in their own homes and communities if they do not want to reside in nursing homes.  Plaintiffs sued the state officials responsible for the Mississippi Division of Medicaid ("MDOM") and the Mississippi Department of Rehabilitation Services ("MDRS") claiming that  Defendants violated their rights under the Americans with Disabilities Act, the Rehabilitation Act, and certain provisions of the Medicaid Act.  Defendants deny that they have violated Plaintiffs' rights but agree to make some changes to promote access to Medicaid Waiver services by people with disabilities.

**II.      Members of the Class  -** In 2003, the Court certified the class to include:

> All people with disabilities who are, or will be, unnecessarily segregated in nursing facilities, and those who are, or will be at risk of unnecessary segregation in nursing facilities due to the lack of sufficient community support services in Mississippi.

**III.     Purpose and Terms of the Settlement Agreement  -** The purpose of the Settlement Agreement ("Agreement") is to increase and improve home and community-based services as an alternative to nursing homes provided primarily through three Medicaid Waiver programs: the Elderly and Disabled (E&D) Waiver, the Independent Living (IL) Waiver, and the Traumatic Brain Injury/ Spinal Cord Injury (TBI/SCI) Waiver.  These Waiver Programs are more fully described on page four of this Notice.  If this Agreement is ordered by the Court, Defendants will implement the following process:

**A.     *Services for Current Nursing Home Residents***

    (1)     If you currently reside in a nursing home <u>and</u> the Minimum Data Set ("MDS") of the Nursing Home Resident Assessment for the second quarter of 2004 indicates that you want to live in the community, a staff person from LIFE, a non-profit independent living organization, will contact you to determine if you would like to move to the community with services from the E&D, IL or TBI/SCI Waiver programs as an alternative to remaining in a nursing home.  It is your decision whether you apply for these services and you will have 21 days from the initial contact by LIFE to make this decision.

(2)     If you inform LIFE that you want to apply for Medicaid Waiver Services, Defendants will place your name on separate lists maintained for each of the three Waiver Service programs based upon the date of your admission to the nursing home. Once your name comes to the top of one of these lists, Defendants will contact you to begin the application process. Your eligibility will be determined within ninety (90) days of your application date and you will be notified in writing of the decision. Under the Medicaid Waiver programs, you may qualify for one-time funding, up to $800.00, to help pay for housing/utility deposits and moving expenses. If you are eligible for Medicaid Waiver services, you will have up to six (6) months and one (1) week from the date of your application to move to the community. You also may obtain help from LIFE to assist in locating housing and other services you need to live in the community.

(3)     If you currently reside in a nursing home but did not answer "yes" to the MDS assessment question described in paragraph (1), but would like to move out of the nursing home, you should carefully read page four of this Notice. If you need Medicaid Waiver services to live in the community, you should contact the appropriate state agency and ask that your name be placed on a Medicaid Waiver Referral List.. When your name comes to the top of the list, your application for the program will be taken and your eligibility will be determined. If determined eligible, you may qualify for one-time funding, up to $800.00 to help pay for housing\utility deposits and moving expenses. You also may obtain help from LIFE to assist in locating housing and other services you need to live in the community.

(4)     Defendants will reserve a certain percentage of  Medicaid Waiver services for individuals in nursing facilities and a certain percentage for all other eligible individuals.

(5)     If you inform LIFE that you do not want to move to the community or if you cannot decide within 21 days of their initial contact,  you can later apply for Medicaid Waiver services by contacting the appropriate state agency, as described on page 4 of this Notice, and placing  your name on the existing Medicaid Waiver Referral List. When your name comes to the top of the list, your application for the program will be taken and your eligibility will be determined. If determined eligible, you may qualify for one-time funding, up to $800.00 to help pay for housing\utility deposits and moving expenses. You also may obtain help from LIFE to assist in locating housing and other services you need to live in the community.

**B.     *Other Provisions of the Settlement Agreement***

(1)     MDRS will make a good faith request of the Mississippi Legislature to increase funding for the IL and TBI/SCI Waiver programs during state fiscal years 2006, 2007, and 2008 in order to serve an additional 500 people per year in each of these programs.

(2)     MDRS will increase the  hourly wage for personal care attendants in the IL and TBI/SCI Waiver programs by $.50/hour effective July 1, 2005 and will request funds from the legislature for additional pay increases totaling $1.50 over three years.

(3)     MDOM will develop and implement an effective pre-admission screening process that will allow people with disabilities to make an informed choice between institutional and community-based services.

(4)     Defendants will meet with representatives of MCCD so that the organization can present its proposal regarding strategies to rebalance Mississippi Medicaid's long term care services. Defendants will request the participation of key legislative and executive officials in this meeting.

(5)     Defendants will request approval from the Centers for Medicare and Medicaid Services to amend the IL and TBI/SCI Waiver programs so that personal care services may be provided by a non-legally responsible family member in certain circumstances.

(6)     MDRS will ensure that its policies clearly state that the amount of personal care services is based solely upon each individual's particular need and that there are no predetermined or fixed limits on the amount of attendant services available through these programs.

(7)     Defendants will ensure that their policies provide applicants and participants written notice and the opportunity for a fair hearing when their requests for services are reduced, denied, terminated or not acted upon with reasonable promptness.

(8)     Defendants will ensure that their policies reflect that nursing facility residents may apply for Medicaid Waiver services while residing in the nursing facility.

(9)     Defendants will pay a portion of Plaintiffs' attorneys' fees and expenses, as none of the Plaintiffs were charged for representation by their attorneys.

**IV.   Your Rights As a Class Member**  -  As a class member, you can do any of the following:

(A)     You can do nothing and you will be both entitled to, and bound by, the Agreement.

(B)     If you disagree with the terms of the Agreement, you can object in writing by contacting the Southern Disability Law Center at the address/number below.

(C)     You can attend the Fairness Hearing to be held by Judge Wingate on May 12, 2005, at 4:00 p.m. in Courtroom 3 of the U.S. District Court for the Southern District of Mississippi, 245 East Capitol Street, Jackson, MS 39201.

**V.    Obtaining Further Information** - You can read the entire Agreement at **http://www.dom.state.ms.us/** OR **http://www.mdrs.state.ms.us.**

If you have questions about the Agreement, would like to receive a copy of the Agreement, or need help in writing your objection to the Court, you can contact James Comstock-Galagan or Maureen O'Connell of the Southern Disability Law Center by calling 1-800-772-4057.

## MEDICAID HOME AND COMMUNITY BASED WAIVER SERVICES

If you have a disability and are living in a nursing facility, you may be eligible to receive community-based services (called Medicaid Waiver services), so that you can return to your home or community. There is a limit on the number of people in each Medicaid Waiver program at any one time. If you decide to apply for Medicaid Waiver services, you may be told that your name will be placed on a referral list. Eligible individuals are served in the order their names appear on these referral lists. Once your name comes to the top of the list, you will be contacted to complete an application for Medicaid Waiver services. If determined eligible for Medicaid Waiver services, you may also qualify for up to $800 in financial assistance to help with the cost of housing/utility deposits and moving expenses. Moving from a nursing facility to the community can be difficult but there are resources to help you obtain housing and other services. For assistance, contact LIFE, the state independent living center, at 601.969.4009.

### THE ELDERLY AND DISABLED ("E&D") WAIVER PROGRAM

You are eligible for this program if you: (1) are at least 21 years of age and eligible for Medicaid; (2) need assistance with at least three activities of daily living, such as eating, bathing, toileting, personal hygiene, ambulation, or dressing; **and** (3) require nursing facility level of care if assistance is not provided to you.

Services you can receive from the E&D Waiver program are: case management, homemaker services, adult day care, expanded home health visits, home delivered meals, escorted transportation, and respite services.

To obtain more information or to apply for the E&D Waiver program, please contact the MISSISSIPPI DIVISION OF MEDICAID at 1-800-421-2408.

### THE INDEPENDENT LIVING ("IL") PROGRAM

You are eligible for this program if you: (1) are eligible for Medicaid; (2) have a severe orthopedic or neurological disability making you dependent on others, or on assistive devices or other assistance to accomplish activities of daily living, such as eating, bathing, toileting, personal hygiene, ambulation, or dressing; (3) require nursing facility level of care if assistance is not provided to you; **and** (4) are certified by your primary physician as medically stable, as defined in the IL Waiver program.

Services you can receive from the IL Waiver program are case management, personal care attendant services, and specialized medical equipment or supplies.

### THE TRAUMATIC BRAIN INJURY/SPINAL CORD INJURY ("TBI/SCI") PROGRAM

You are eligible for this program if you: (1) are eligible for Medicaid, (2) are certified by your primary physician as having a traumatic brain or spinal cord injury, as defined in the TBI/SCI Waiver program; (3) require nursing facility level of care if assistance is not provided to you; **and** (4) are certified by your primary physician as medically stable, as defined in the TBI/SCI Waiver program.

Services you can receive from the TBI/SCI Waiver program are case management, personal care attendant services, respite services, home modifications, and specialized medical equipment and supplies.

To obtain more information or to apply for the IL or TBI/SCI Waiver programs, please contact the MISSISSIPPI DEPARTMENT OF REHABILITATION SERVICES at 1-800-443-1000.



EXHIBIT

tabbies®

2

# STATE OF MISSISSIPPI
## DEPARTMENT OF REHABILITATION SERVICES
## CONTRACT FOR PROFESSIONAL SERVICES

### 05-240-3340-100

1. **Parties.**     This contract is made and entered into by and between the Mississippi Department of Rehabilitation Services (MDRS), the Mississippi Division of Medicaid in the Office of the Governor (DOM), and Living Independence for Everyone (LIFE).

2. **Purpose.**     MDRS and DOM hereby engage the services of LIFE, and LIFE hereby agrees to render those certain services described in Paragraph 3, "Scope of Services", below.

3. **Scope of Services.**     LIFE shall perform the following services:

   A.   Maintain the confidentiality of the Nursing Facility (NF) Resident Master List (those who answered yes to Q1A on the CMS case mix survey) provided by MDRS or DOM;

   B.   Upon receipt of the NF Resident Master List, Contact each individual on the NF Resident Master List and determine whether that individual desires to move to the community via the IL, TBI/SCI, or E&D waiver;

   C.   Document contact, on data report form provided by MDRS and DOM, with every individual on the NF Resident Master List. Data shall include, but not be limited to, individual's date of admission to the Nursing Facility;

   D.   For those individuals who are deceased or otherwise unable to be located, documentation shall be provided on the data report form of the reason(s) contact is unable to be made;

   E.   For each individual who informs LIFE that they do not wish to transition to the community on the IL, TBI/SCI or E&D waiver or who fail to indicate a response to LIFE within 21 days of initial contact, LIFE will document such on the data report form and will inform the individual that he or she is free to apply for Medicaid Waiver services in the future and have his or her name added to the existing Medicaid waiver referral lists;

   F.   LIFE will provide original data report forms to MDRS and DOM on a weekly basis to the individual designated by MDRS and DOM to keep such data records;

   G.   When contacted by MDRS or DOM regarding a specific individual, LIFE will contact that individual and offer the services LIFE routinely provides outside this contract.

   H.   Communicate with MDRS and DOM, on a regular and timely basis, information

related to the execution of this contract. Communication may be in the form of written documentation, telephone or face to face meeting for purpose of clarification, documentation or otherwise in support of furtherance of achieving the scope of services of this contract.

4.   **Period of Performance.**   The period of performance of services under this Contract shall begin on the date of the Settlement Agreement in *Billy A. et.al. vs. Jones et.al.*, U.S. Southern District Court of MS No.3:02CV475 WS and end three years from that date.

5.   **Consideration and Method of Payment**   As consideration for the performance of this Contract, LIFE shall be paid a total of One Hundred Thousand Dollars ($100,000.00).

A.   Upon receipt of 25% of data report forms as set forth in Paragraph 3.C., LIFE shall be paid Twenty-five Thousand Dollars ($25,000.00). Upon receipt of the next 25% of data report forms as set forth in Paragraph 3.C., LIFE shall be paid Twenty-five Thousand Dollars ($25,000.00). Upon receipt of the next 25% of the data report forms as set forth in Paragraph 3.C., LIFE shall be paid Twenty-five Thousand Dollars ($25,000.00). Upon receipt of the final 25% of the data report forms as set forth in Paragraph 3.C., LIFE shall be paid Twenty-five Thousand Dollars ($25,000.00).

B.   Invoices submitted as a result of payment schedule as noted in 5.A. above shall be divided between MDRS and DOM on a 50/50 basis.  MDRS and DOM will be responsible for submitting their respective payments for services performed under this Contract directly to LIFE as opposed to one agency making entire payment with the second agency providing reimbursement for half of the invoiced amount.

C.   It is expressly understood and agreed that in no event will the total compensation to be paid pursuant to this Contract exceed One Hundred Thousand Dollars ($100,000.00). Additionally, it is expressly understood and agreed that total compensation to be paid pursuant to this Contract will not exceed Fifty Thousand Dollars ($50,000.00) for MDRS and Fifty Thousand Dollars ($50,000.00) for DOM.

6.   **Relationship of Parties.**   It is expressly understood and agreed that MDRS enters into this Contract with LIFE based on the purchase of professional services and not based on an employer-employee relationship. For all purposes under this Contract:

A.     LIFE represents that it has, or will secure, at its own expense, applicable personnel who shall be qualified to perform the duties required to be performed under this Contract.  Such personnel shall not be deemed in any way, directly or indirectly, expressly, or by implication, to be employees of MDRS or DOM.

B.     Any person employed by LIFE to perform the services hereunder shall be the employee of LIFE, who shall have the sole right to hire and discharge its employee.

C.    It is further understood that the consideration expressed herein constitutes full and complete compensation for all services and performances hereunder, and that any sum due and payable to LIFE shall be paid as a gross sum with no withholdings or deductions being made by MDRS or DOM for any purpose from said Contract sum.

D.    LIFE shall pay, when due, all salaries and wages of its employees, and it accepts exclusive responsibility for the payment of Federal Income Tax, State Income Tax, Social Security, Unemployment Compensation and any other withholdings that may be required.

7.    **Termination for Cause.**    If, through any cause, LIFE shall fail to fulfill in a timely and proper manner, as determined by MDRS or DOM, its obligations under this Contract, or if LIFE shall violate any of the covenants, agreements, or stipulations of this Contract, MDRS or DOM shall thereupon have the right to terminate the Contract by giving written notice to LIFE of such termination and specifying the effective date thereof, at least fifteen (15) days before the effective date of such termination. In the event of such termination, LIFE shall be entitled to receive just and equitable compensation for satisfactory work completed on documents, services or materials collected and/or prepared by LIFE in connection with this Contract as of the date of receipt of Notification of Termination. Such compensation shall be based upon the amount set forth in Paragraph 5, but, in no case, shall said compensation exceed the total Contract price.

Notwithstanding the above, LIFE shall not be relieved of liability to MDRS or DOM for damages sustained by MDRS or DOM by virtue of any breach of this Contract by LIFE and MDRS of DOM may withhold any payments to LIFE for the purpose of set off until such times as the exact amount of damages due to MDRS or DOM from LIFE are determined.

8.    **Termination for Convenience.**    Either MDRS or DOM or LIFE may terminate this Contract at any time by giving written notice to the other parties of such termination and specifying the effective date thereof, at least fifteen (15) days before the effective date of such termination.

9.    **Ownership of Documents and Work Product.**    All documents, notes, programs, books, data bases (and all applications thereof), files, reports, studies, unfinished documents and/or other materials collected or prepared by LIFE specifically at the request and solely for the use of MDRS and DOM, which information is not of the sort that would be compiled in the ordinary course and scope of LIFE's regular business activities, shall be owned by MDRS or DOM upon completion or termination of this agreement. MDRS or DOM reserve the rights to any and all information and/or materials collected on its behalf.

LIFE assures that any and all information given to them or generated by them, will be kept strictly confidential and will not be released to any person or entity and will become the property of MDRS and DOM. LIFE further assures that MDRS and DOM shall have full access to all information collected.

10.  **Record Retention and Access to Records.**  LIFE shall maintain, and shall make available to MDRS, any state agency authorized to audit MDRS or DOM, the federal grantor agency, the Comptroller General of the United States or any of their duly authorized representatives, financial records, supporting documents, statistical records and all other records pertinent to the services performed under this Contract.  These records shall be maintained for at least three (3) years; however, if any litigation or other legal action, by or on behalf of the State or Federal Government has begun that is not completed at the end of the three (3) year period, or if audit findings, litigation or other legal action has not been resolved at the end of the three (3) year period, the records shall be retained until resolution.

11.  **Modification or Amendment.**        Modifications, changes or amendments to this Contract may be made upon mutual agreement of the parties, in writing and signed by the parties hereto.

12.  **Assignment.**   LIFE may not assign or otherwise transfer its obligations or duties under this Contract without the prior written consent of MDRS and DOM.  Any attempt to assign or transfer the obligations and duties hereunder without such consent shall be void.

13.  **Waiver.**        Failure of either party hereto to insist upon strict compliance with any of the terms, covenants and conditions hereof shall not be deemed a waiver or relinquishment of any similar right or power there under at any subsequent time or of any other provision hereof, nor shall it be construed to be a modification of the terms of this Contract.

14.  **Funding.**        It is expressly understood by the parties hereto that the fulfillment of the obligations of MDRS and DOM under this agreement is conditioned upon the availability and receipt of Federal and State funds.  In the event that funds are insufficient or otherwise unavailable to satisfy payments due under this agreement, MDRS and DOM shall not be obligated to make such payments, and all further obligations of MDRS and DOM under this agreement shall cease immediately, without penalty, cost or expense to MDRS and DOM of any kind whatsoever. In the event of such insufficiency or unavailability of funding, MDRS and DOM shall notify LIFE, in writing, of such event, and this agreement shall be void.

15.  **Indemnification.**        LIFE agrees to indemnify, defend, save and hold harmless MDRS and DOM from and against all claims, demands, liabilities, suits, damages and costs of every kind and nature whatsoever, including court costs and attorney's fees, arising out of or caused by LIFE, its agents or employees in the performance of this Contract.

16.  **Insurance.**        LIFE represents that it will maintain workers' compensation insurance which shall inure to the benefit of all LIFE's personnel provided hereunder, comprehensive general liability, and, where applicable, employee fidelity bond insurance.  LIFE will furnish MDRS and DOM with a certificate of insurance providing the aforesaid coverage.

17.  **Governing Law and Legal Remedies.**        This Contract shall be construed and governed

in accordance with the laws of the State of Mississippi. LIFE expressly agrees that under no circumstances shall MDRS or DOM be obligated to pay an attorney's fee or the cost of legal action to LIFE.

18. **Severability.** If any term or provision of this Contract is prohibited by the laws of the State of Mississippi or declared invalid or void by a court of competent jurisdiction, the remainder of this Contract shall not be affected thereby and each term and provision of this Contract shall be valid and enforceable to the fullest extent permitted by law.

19. **Disputes.** Any dispute concerning a question of fact arising under this Contract shall be disposed of by good faith negotiation between a duly authorized representative of MDRS, DOM, and LIFE. Such a resolution shall be reduced to writing and a copy thereof mailed or furnished to LIFE and shall be final and conclusive, unless within ten (10) days from the date of such resolution, LIFE mails or furnishes to the Executive Directors of MDRS and DOM a written request for review. LIFE shall be afforded an opportunity to be heard and to offer evidence in support of his/her/its position on the issue in dispute and under review. The decision of the Executive Directors on the review shall be final and conclusive unless determined by a court of competent jurisdiction in Hinds County, State of Mississippi, to have been fraudulent, capricious, or so grossly erroneous as necessarily to imply bad faith, or not to be supported by substantial evidence. Pending final decision of a dispute hereunder, LIFE shall proceed diligently with the performance the duties and obligations of the Contract.

20. **Compliance with Laws.** LIFE shall comply with all applicable laws, regulations, policies and procedures and Grant requirements (if applicable) of the United States of America or any agency thereof, the State of Mississippi or any agency thereof and any local governments or political subdivisions that may affect the performance of services under this Contract. Specifically, but not limited to, LIFE shall not discriminate against any employee nor shall any party be subject to discrimination in the performance of this Contract because of race, religion, color, sex, age, national origin or disability.

21. **HIPAA Compliance.** Contractor agrees to comply with the Administrative Simplifications provisions of the Health Insurance Portability and Accountability Act of 1996, including electronic data interchange, code sets, identifiers, security, and privacy provisions, as may be applicable to the services under this contract.

22 **Entire Agreement.** This Contract constitutes the entire agreement of the parties with respect to the subject matter contained herein and supersedes and replaces any and all prior negotiations, understandings and agreements, written or oral, between the parties relating thereto.

23. **Suspension and Debarment.** LIFE certifies that its organization and its principals are not suspended or debarred or otherwise excluded from or ineligible for participation in Federal assistance programs.

24.   **Notice.**        Any notice required or permitted to be given under this Contract shall be in writing and sent by United States Certified Mail, Return Receipt Requested, to the party to whom the notice should be given at the address set forth below:

| | |
|---|---|
| MDRS: | H. S. McMillan, Executive Director<br>Mississippi Department of Rehabilitation Services<br>P.O. Box 1698<br>Jackson, Mississippi  39215-1698 |
| DOM | Warren A. Jones, M.D., Executive Director<br>Office of the Governor, Division of Medicaid<br>239 North Lamar Street, 801 Robert E. Lee Building<br>Jackson, Mississippi 39201 |
| INDEPENDENT<br>CONTRACTOR: | Christy Dunaway<br>Living Independence for Everyone (LIFE)<br>754 North President Street<br>Jackson, MS 39202 |

The parties agree to notify the other in event of change of address.

IN WITNESS WHEREOF, this contract has been entered into and executed by the parties hereto in duplicate originals.

Witness my signature this ___8th___ day of ___February___, 2005.

**Mississippi Department of Rehabilitation Services**

By: _H. S. McMillan_          Witnesses: _Natalie Wagner_
H. S. McMillan
Executive Director

Witness my signature this ___14th___ day of ___February___, 2005.

**Mississippi Division of Medicaid in the Office of the Governor**

By: _Warren_          Witnesses: _Melia Errington_
Warren A. Jones, M.D.
Executive Director

**Living Independence for Everyone**

Witness my signature this _19_ day of _February_ _____, 2003.

By: _Christy Dunaway_   Witnesses: _Christine Woodell_
    Christy Dunaway
    Executive Director
                                    _____

Witness my signature this _19_ day of _Feb_ _____, 2005.

By: _Jan Cloud_   Witnesses: _Marieta L Maddox_
    Jan Cloud
    Chairperson,
    LIFE Board of Trustees
                                      _____